## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 18-03146-01-CR-S-RK |
| DALE WAYNE MARTIN, | ) ) ) | |
| Defendant. | ) | |

## **REPORT & RECOMMENDATION**

Before the Court is Defendant's Motion to Suppress Evidence. (Doc. 20.) This action has been referred to the undersigned for the purpose of submitting a report on any pretrial motions for suppression of evidence. As follows, it is **RECOMMENDED** that the Motion to Suppress Evidence be **DENIED**.

### I.   Background

Defendant moves for an order suppressing evidence seized during a search of his residence on February 3, 2018 in Howell County, Missouri, as well as statements made during and immediately after the search. He claims the search violated his Fourth Amendment right to privacy because: (1) "the search warrant was improperly based solely upon the uncorroborated statement of an unreliable source of information"; and, (2) "[his] residence was not the residence described in the search warrant." (Doc. 20 at 1.) Defendant specifically moves to suppress the following items, relevant to the charges in Counts 1-4 of the Indictment: (1) a Taurus .357 caliber revolver, serial number JG328147; (2) four rounds of ammunition; (3) substances purported to contain methamphetamine; (4) substances purported to contain Fentanyl; and, (5) United States currency. He also moves to suppress his statements made to law enforcement during the search at his

residence and immediately after the search at the Howell County Jail. The Government has filed Suggestions in Opposition, and Defendant has filed a Response. (Docs. 23, 26.)

The undersigned conducted an evidentiary hearing on the motion on January 10, 2020. (Doc. 34.) The Government was represented by Special Assistant U.S. Attorney Jessica Keller, while Defendant appeared in person with his attorney, Michelle Law. Kyle Parrish appeared and testified for the Government.

## II. Findings of Fact[1]

Kyle Parrish is a patrol sergeant for the West Plains, Missouri Police Department. On January 31, 2018, Sgt. Parrish interviewed Mackenzie Kesling at the police department. At the time, Ms. Kesling was detained at the municipal jail on municipal warrants and had asked to speak with an investigator regarding information she possessed. Criminal charges were also pending against Ms. Kesling in the Circuit Court of Howell County, Missouri. During the interview, Ms. Kesling provided the following information to Sgt. Parrish:

> 1) In the past five days I went to the residence of a man I know as Dale. I do not know Dale's last name as we have recently met. Dale lives in a trailer on the property of Tom Hardin. The trailer is the first trailer down Tom's driveway off of State Route MM.
>
> 2) While at Dale's residence I observed a tray on a table in his living room. The tray had approximately a gram of loose methamphetamine on it.
>
> 3) Later Dale and I were in his bedroom. Dale opened a nightstand that had a set of digital scales, a methamphetamine pipe, a spoon, syringes, empty bags, and a bag with approximately 3.5 grams of methamphetamine inside.
>
> 4) In the past month I have been to Dale's residence approximately three times with Kimberly Riley so Kimberly could obtain methamphetamine from Dale.
>
> 5) I have been using methamphetamine for approximately eleven years.

---

[1] The facts set forth are taken from the testimony adduced and exhibits admitted at the suppression hearing, see Transcript (doc. 37) and Exhibit Indexes (docs. 35, 36).

Ms. Kesling stated that Dale's residence was in Pottersville. She also indicated where the residence was located on the property using aerial photographs. The residence, a manufactured home, was not actually present in the aerial photographs, which were taken prior to the residence's placement on the property. While Ms. Kesling spoke, Sgt. Parrish prepared an affidavit with the information she provided. Ms. Kesling then reviewed the affidavit independently for any mistakes or inaccuracies and signed it under oath. Sgt. Parrish told Ms. Kesling he would speak to the prosecutor on her behalf. He later advised the prosecutor that Ms. Kesling had cooperated by providing information. Sgt. Parrish had not used Ms. Kesling as an informant previously and had no knowledge as to her past reliability

Sgt. Parrish followed up on the information provided by Ms. Kesling by speaking with investigators with the Howell County Sheriff's Office and the South Central Drug Task Force. He learned that "Dale" was likely Dale Martin, who was known to associate with Tom Hardin and Harold Hardin. He was informed that Harold Hardin had been the subject of a narcotics search warrant in the past. In addition, Sgt. Parrish conducted a criminal history check and found that Dale Martin had convictions for possession of a controlled substance and distribution of a controlled substance.

Sgt. Parrish then prepared an application for a search warrant. The application included Ms. Kesling's affidavit and Sgt. Parrish's own affidavit, wherein he described the interview with Ms. Kesling and the information she provided and added that "information provided by law enforcement indicates Dale is likely Dale Martin. Dale is known to associate with Tom Hardin along with Tom's relatives including Harold Hardin. Harold has been the target of a search warrant in the past."

The next day, February 1, 2018, Judge Truman Wiles of the Circuit Court of Howell County, Missouri found probable cause to issue a search warrant based on the information provided in the application and affidavits. The warrant described the place to be searched as follows:

> The premises of 11544 State Route MM, Pottersville, Howell County, Missouri. The specific premises are those immediately surrounding and including the eastern manufactured home on the north side of the driveway of the property occupied by Tom Hardin. The eastern manufactured home is a recent addition to the property that is occupied by someone other than Tom Hardin, who occupies a residence east of the specified manufactured home.
>
> The residence is described as a single wide manufactured home just east of the shop building along the north side of the driveway to 11544 State Route MM, Pottersville, Howell County, Missouri. The residence is further described as the first and only other manufactured home other than Tom Hardin's on the premises.

There is only one 11544 State Route MM address in Howell County, Missouri. It is located in a "very rural" area on a dead-end driveway off a two-lane state highway. 11544 State Route MM is approximately 18 to 20 miles away from the city of West Plains and approximately 5-6 miles away from the unincorporated community of Pottersville but is not located within any city limits. Two months after the warrant was executed, Sgt. Parrish learned that 11544 State Route MM has a West Plains mailing address and not a Pottersville mailing address.

On February 3, 2018, Sgt. Parrish convened a team to search 11544 State Route MM. Prior to executing the warrant, Sgt. Parrish realized that the warrant erroneously described the residence to be searched as "the eastern manufactured home" rather than the western manufactured home in two places. However, apart from the aforementioned error as to the city, the warrant had the correct address and described the residence as the first manufactured home on the property, just east of the shop building on the north side of the driveway. The warrant also described the residence to be searched as "a recent addition." Some members of the search team had been to the

4

property prior to the residence's placement there. Furthermore, Tom Hardin's residence, which was excluded from the warrant, was correctly described as being east of the residence to be searched. Sgt. Parrish briefed the search team with the correct description and believed there was no confusion as to which residence on the property was to be searched. The team then executed the warrant as to the correct residence, that of Defendant.

### III. Conclusions of Law

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. *See* U.S. Const. amend. IV; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found as a result of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011). Defendant raises two arguments for suppression of evidence. First, Defendant contends the search warrant lacked probable cause because it was based on unreliable information. Second, he claims the search warrant failed to sufficiently describe the place to be searched. Contrary to Defendant's assertions, however, the evidence shows that the warrant was supported by probable cause and sufficiently described his residence.

#### A. Probable cause for the search warrant

Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A judge issuing a warrant determines probable cause based on the totality of the circumstances, using a common sense, not hypertechnical, approach. *United States v. Buchanan*, 574 F.3d 554, 561 (8th Cir. 2009) (*citing Gates*, 462 U.S. at 238). When probable cause is based on information supplied by an informant, the core question is whether the information is reliable. *United States v. Williams*, 10

F.3d 590, 593 (8th Cir. 1993). A totality of the circumstances analysis prohibits an "excessively technical dissection of informants' 'tips'" that views "bits and pieces of information in isolation." *Buchanan*, 574 F.3d at 562-63; *see also Gates*, 462 U.S. at 234-35. A reviewing court should pay "great deference" to an issuing judge's probable cause determination and simply ensure there was a "substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 236, 238-239.

"Where a previously unknown informant provides information, the informant's lack of a track record requires some independent verification to establish the reliability of the information." *United States v. Brown*, 49 F.3d 1346, 1349 (8th Cir. 1995) (internal citation and quotation omitted). "Independent verification occurs when the information (or aspects of it) is corroborated by the independent observations of police officers." *Id*.

Defendant argues that the search warrant is not valid because its issuance was based on unreliable information. Specifically, Defendant claims Ms. Kesling is not a reliable source of information. In support, Defendant asserts that although Ms. Kesling admits she is a long-time user of methamphetamine, she claims it was not she, but a friend who purchased methamphetamine from Defendant. Defendant states the search warrant application is void of information related to the circumstances of the questioning of Ms. Kesling. Also, Defendant argues that Ms. Kesling had been dishonest to Judge Wiles previously. Lastly, according to Defendant, the search warrant application "is void of corroborating information."

### 1. Non-admission of liability

Defendant first argues Ms. Kesling is unreliable because despite admitting long-time drug use, she stated she was just accompanying a friend who was at the residence to purchase drugs. This is only speculation, however, as there is no evidence that Ms. Kesling's statement was untrue. Furthermore, although Ms. Kesling made no admission of involvement in the purchase of drugs,

6

she made her statement via an affidavit under oath and "could have been prosecuted had [she] made false sworn statements [which] made [her] presumptively more reliable than an anonymous source." *United States v. Carter*, 413 F.3d 712, 714 (8th Cir. 2005). Thus, she "would have received a personal benefit only if the information [she] provided was reliable, and [she] would have suffered a detriment if the information [she] provided proved unreliable." *Id.* at 715. Accordingly, the undersigned does not agree that Ms. Kesling's alleged failure to admit any criminal liability renders her information unreliable, as there is no evidence that she was criminally liable. And, in any event, her sworn statement subjected her to criminal liability if she was being dishonest.

### 2. Circumstances of questioning

Regarding the circumstances of the questioning, the encounter was initiated by Ms. Kesling, who asked to speak with an officer and was interviewed at the police station. Sgt. Parrish asked her if she was willing to sign an affidavit as to her statement and allowed her to review the affidavit before signing it. Sgt. Parrish made no promises to Ms. Kesling other than stating he would advise the prosecutor that she had cooperated by providing information. Additionally, Sgt. Parrish spoke with Ms. Kesling "in person and therefore had an opportunity to assess [her] credibility." *Id.* at 715. Based on the foregoing, there is no evidence that the circumstances of the questioning rendered the information unreliable.

### 3. Letter to issuing magistrate

Defendant also argues that Ms. Kesling had been dishonest to Judge Wiles previously, asserting that she had written a letter to Judge Wiles in a separate criminal case stating she was going to self-surrender on a warrant in Taney County, Missouri but then ultimately did not self-surrender. There is no indication, however, that Sgt. Parrish knew of this alleged dishonesty by

7

Case 6:18-cr-03146-RK    Document 39    Filed 09/14/20    Page 7 of 16

Ms. Kesling, or that Judge Wiles was aware that Ms. Kesling ultimately did not self-surrender. Furthermore, it is unlikely that a single instance of failing to appear by a criminal defendant, which is a very common occurrence in criminal cases, would lead a judge to disbelieve the defendant's information, as "informants frequently have criminal records and often supply information to the government." *United States v. Allen*, 297 F.3d 796 (8th Cir. 2002) (quoting *United States v. Flagg*, 919 F.2d 499, 501 (8th Cir. 1990)).

### 4. Corroboration

As for corroboration, after receiving the information from Ms. Kesling, a previously unknown informant, Sgt. Parrish spoke with other law enforcement officers to verify Dale's identity and also learned of his association with Tom and Harold Hardin and their drug-related activity. This information was included in Sgt. Parrish's affidavit in support of the application for warrant. In addition, Sgt. Parrish checked Defendant's criminal history and learned he had prior convictions for possession and distribution of drugs. Also, the warrant named Ms. Kesling as the informant. *See United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008) ("named informants, unlike confidential informants, require little corroboration"). In summary, Sgt. Parrish sufficiently corroborated the information provided by Ms. Kesling, and Defendant's assertion that the information was void of corroboration is incorrect.

### 5. Totality of the circumstances

Contrary to Defendant's "technical dissection" of Ms. Kesling's information, the undersigned concludes that probable cause existed. Although Ms. Kesling had not served as an informant previously, she provided a sworn statement naming herself as the informant to Sgt. Parrish at the police station. The circumstances of the questioning give no reason to question her credibility. Ms. Kesling provided detailed information regarding Defendant's residence and her

personal observation of methamphetamine and narcotics paraphernalia there within the last five days. And, Sgt. Parrish independently corroborated Defendant's associations with Tom Hardin, the other person with a residence on the property at issue, and Harold Hardin, a prior subject of a drug investigation, as well as Defendant's prior drug-related criminal history. In summary, based on the totality of the circumstances presented in the warrant application, there was a substantial basis for the issuing judge to conclude that methamphetamine and items related to the use and distribution of methamphetamine would be found at Defendant's residence. Therefore, probable cause existed.

### B. Description of the place to be searched

Defendant's second argument is that the search warrant failed to sufficiently describe the place to be searched. Defendant states the description of the residence contained two errors: (1) his residence is not located in Pottersville, Missouri; and, (2) his residence is west, not east, of Tom Hardin's home.

The law is clear that "[t]he test for determining the sufficiency of the description of the place to be searched is whether the place to be searched is described with sufficient particularity as to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise[s] might be mistakenly searched."[2] *United States v. Skarda*, 845 F.3d 370, 377 (8th Cir. 2016) (quoting *United States v. Gitcho*, 601 F.2d 369, 371 (8th Cir. 1979)). "The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." *United States v. Fiorito*, 640 F.3d 338, 346

---

[2] A majority of Circuits have applied the same two-prong test. *See, e.g.*, *United States v. Crumpton*, 824 F.3d 593, 612 (6th Cir. 2016); *United States v. McLellan*, 792 F.3d 200, 212 (1st Cir. 2015); *United States v. McMillian*, 786 F.3d 630, 640 (7th Cir. 2015); *United States v. Garcia*, 707 F.3d 1190, 1197 (10th Cir. 2013); *United States v. Voustianiouk*, 685 F.3d 206, 212 (2d Cir. 2012); *United States v. Brobst*, 558 F.3d 982, 992 (9th Cir. 2009); *United States v. Johnson*, 437 F.3d 69, 73 (D.C. Cir. 2006); *United States v. Gilliam*, 975 F.2d 1050, 1055 (4th Cir. 1992); *United States v. Avarello*, 592 F.2d 1339, 1344 (5th Cir. 1979).

(8th Cir. 2011) (internal quotes omitted). The "total circumstances surrounding the case" are taken into account when determining whether a warrant fails for particularity. *Id.*

Where the warrant contains a technical error or omission regarding the description of the place to be searched, courts often consider whether the officers who executed the warrant personally knew which premises was intended to be searched. *See, e.g.*, *United States v. Clement*, 747 F.2d 460, 461 (8th Cir. 1984); *Gitcho*, 601 F.2d at 372. In *United States v. Bonner*, 808 F.2d 864 (1st Cir. 1986), *cert. denied*, 481 U.S. 1006 (1987), the First Circuit, relying on *Gitcho*, upheld a search warrant that contained a detailed description of the premises but failed to include the full address, which the affidavit included. The court found that the warrant "suffered from a minor, technical omission." *Id.* at 866. The court further explained that there was "no risk" that officers would "be confused and stumble into the wrong house," because the officers "knew exactly which house they wanted to search." *Id.* at 866-67.

Here, the warrant simply suffered from a minor, technical error in listing the residence as located in Pottersville, rather than West Plains. In fact, 11544 State Route MM is in neither of those two communities. Instead, it is located in an unincorporated part of Howell County and is the only such address in Howell County. Accordingly, there was no "reasonable probability that another premise[s] might be mistakenly searched" as a result of this minor, technical error, which relates only to the mailing address, and not the actual physical location, of the residence to be searched.

Under the totality of the circumstances, neither does the inaccurate description of the residence as the "eastern," rather than western, residence on the property, cause the warrant to fail. In this case, because the executing officers were personally familiar with the location to be searched, the description provided in the warrant was "described with sufficient particularity as to

10

enable the executing officer[s] to locate and identify the premises with reasonable effort." *Skarda*, 845 F.3d at 377. Although the warrant incorrectly described Defendant's residence as the eastern manufactured home, it correctly described the residence as being "a single wide manufactured home just east of the shop building along the north side of the driveway [and] the first and only other manufactured home other than Tom Hardin's on the premises." The warrant also correctly described the residence to be searched as "a recent addition to the property that is occupied by someone other than Tom Hardin, who occupies a residence east of the specified manufactured home."

Furthermore, on the day of the search and prior to the execution of the warrant, Sgt. Parrish realized the warrant erroneously described the residence to be searched as the "eastern," rather than western, residence on the property and so advised the other officers present. Several of the other officers had been to the property previously, prior to the addition of the manufactured home to the property and were aware that newly added manufactured home was the residence to be searched. Also, the other descriptors of the residence in the warrant, specifically that it was the first manufactured home heading down the driveway from the highway, just east of the shop building and on the north side of the driveway, clarified the residence to be searched. Likewise, the warrant correctly described Tom Hardin's residence, which was not to be searched, as being east of the specific residence to be searched and thus further down the driveway, which runs to the east from the state highway. In summary, under the totality of the circumstances presented by the majority of the descriptors of the residence in the warrant, along with the executing officers' personal knowledge of the property and the clarification by Sgt. Parrish done immediately prior to the execution of the warrant, there was no reasonable probability that another residence might be

11

mistakenly searched. Accordingly, the Court finds that the warrant meets the particularity requirement.

### C. Good faith exception

Defendant does not contend that Sgt. Parrish acted in bad faith. However, even if the search warrant lacked probable cause, Sgt. Parrish acted in good faith pursuant to *United States v. Leon*, 468 U.S. 897, 921 (1984). Under the *Leon* good faith exception, the Fourth Amendment's exclusionary rule does not bar the admission of evidence if the "officers executing an invalid search warrant did so in good faith." *United States v. Ortiz-Cervantes*, 868 F.3d 695, 702 (8th Cir. 2017). "The 'good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the [issuing judge's] authorization.'" *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (quoting *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006)). There are four situations to consider in assessing whether an officer acted in good faith:

> (1) the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*; and (4) the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

*United States v. Dickerman*, 954 F.3d 1060, 1065 (8th Cir. 2020) (emphasis removed). Further, "When assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge." *Proell*, 485 F.3d at 431 (quoting *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001)) (internal quotations omitted).

12

Case 6:18-cr-03146-RK Document 39 Filed 09/14/20 Page 12 of 16

As follows, Sgt. Parrish acted in good faith, even if the warrant lacked probable cause, and as a result the evidence obtained from the search of the residence should not be suppressed.

### 1. False statements

An officer's reliance on a warrant is unreasonable if the affidavit "contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge." *Dickerman*, 954 F.3d at 1065. Here, there is no evidence that the affidavit contained any false statements or omissions made deliberately or with reckless disregard for the truth. As discussed above, although the application did include two errors in its description of the place to be searched, these were minor and unintentional mistakes that did not mislead the issuing judge. Accordingly, this situation is not present, supporting the conclusion that Sgt. Parrish acted in good faith.

### 2. Abandonment of judicial role

An officer's reliance on a warrant is unreasonable if the issuing judge "wholly abandoned his judicial role in issuing the warrant." *Id.* "A judge abandons his or her judicial role when he or she 'does not serve as a neutral and detached actor, but rather as a rubber stamp for the police and an adjunct law enforcement officer.'" *Ortiz-Cervantes*, 868 F.3d at 703 (quoting *United States v. Long*, 797 F.3d 558, 567 (8th Cir. 2015)). Examples of abandonment include not reading the warrant or not recognizing the application was either unsigned or failed to identify the property to be searched. *Dickerman*, 954 F.3d at 1067; *Ortiz-Cervantes*, 868 F.3d at 703. Also, a judge violates the obligation to be neutral if he has a "pecuniary interest in issuing the warrant" or has "actively participated in the police investigation." *Dickerman*, 954 F.3d at 1067-68.

Here, there is no evidence the issuing judge abandoned his judicial role as a neutral and detached actor. The warrant identifies the residence to be searched, albeit with two inconsequential

13

errors, along with the contraband to be seized. The affidavits and the warrant were signed. There is no evidence that the issuing judge had any conflict of interests or actively participated in the investigation. Thus, this situation is also not present, supporting the *Leon* good faith exception.

### 3. Indicia to support probable cause

Reliance on the warrant would not be in good faith if the affidavit in support is "so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable." Id.* at 1065 (emphasis in original). "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." *Puckett*, 466 F.3d at 630 (quoting *Leon*, 468 at 921). Further, a "consistent finding of probable cause by every judge who independently reviewed the affidavit, satisfies us that the affidavit bore sufficient indicia of probable cause to render the investigating officers' reliance on it objectively reasonable." *United States v. Ross*, 487 F.3d 1120, 1124 (8th Cir. 2007).

Here, the affidavit provided sufficient indicia to make the reasonable belief that probable cause was established. The affidavits were reviewed and approved by the issuing judge. Sgt. Parrish is not an attorney, so his reliance on the determinations made by the issuing judge was reasonable. Additionally, as discussed in the probable cause section of this report, the undersigned finds that the affidavits established probable cause.

Also, although Sgt. Parrish did not include Defendant's criminal convictions in the affidavit, his knowledge of these convictions supports his belief that there were sufficient indicia in support. *See Proell*, 485 F.3d at 431. In summary, the affidavit provided sufficient indicia supporting Sgt. Parrish's reasonable belief that probable cause was established, further supporting the good faith exception.

### 4. Facially deficient warrant

Lastly, reliance on a warrant is unreasonable if "the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid." *Dickerman*, 954 F.3d at 1065. A warrant is facially deficient when it "fail[s] to particularize the place to be searched or the things to be seized..." *United States v. Carpenter*, 341 F.3d 666, 673 (8th Cir. 2003) (quoting *Leon*, 468 U.S. at 923) (internal quotations omitted). Further, the warrant's level of ambiguity is indicative of whether it is facially deficient. *Id.*

Here, the warrant was not so facially deficient that Sgt. Parrish could not presume it to be valid. The warrant specifically identifies the place to be searched as well as the contraband sought. Despite the two minor errors in the description of the residence, as discussed above there were enough other identifiers to clarify the place to be searched without ambiguity. Sgt. Parrish noted and discussed the errors with the search team prior to executing the warrant. Further, as discussed in the probable cause section of this report, Sgt. Parrish described the specific information from Ms. Kesling along with his own corroboration of that information. As a result, the warrant was not facially deficient, again supporting good faith reliance.

### 5. Conclusion

Based on the foregoing, even if the warrant lacked probable cause, the law enforcement officers acted in good faith in executing the warrant. Accordingly, the *Leon* good faith exception applies, and the evidence obtained from the warrant should not be suppressed.

### D. Fruit of the poisonous tree

Defendant also seeks the suppression of any statements he made during the search at his residence or immediately after the search at the Howell County Jail, assumedly as fruit of the poisonous tree. Under the fruit of the poisonous tree doctrine, the exclusionary rule bars the

admission of evidence obtained directly or indirectly through the exploitation of police illegality. *See Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963).  As discussed, however, the search was made pursuant to a valid search warrant that was supported by probable cause and sufficiently described the place to be searched.  As a result, the search was lawful, and any fruit of the poisonous tree contention fails.

### IV. Recommendation

Based on the foregoing, it is **RECOMMENDED** that the Motion to Suppress Evidence be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: September 14, 2020